**Louise HUBBARD, et al., Plaintiffs,**

**v.**

**CITY OF GRENADA, MISSISSIPPI, et al., Defendants.**

**No. 3:96CV172–S–A.**

United States District Court,
N.D. Mississippi,
Western Division.

Nov. 21, 1997.

Robert B. McDuff, Jackson, MS, Ellis Turnage, Cleveland, MS, for Plaintiffs.

Thomas H. Freeland, Freeland & Freeland, Oxford, MS, Jim McRae Criss, Grenada, MS, Jerry L. Mills, Pyle, Dreher, Mills & Dye, Ridgeland, MS, for Defendants.

### OPINION

SENTER, Chief Judge.

This voting rights matter has come before the court on numerous occasions over the last eighteen months in the form of preliminary injunction hearings, status conferences, and conference calls. On each of these occasions, defendants assured the court and plaintiffs that they were moving forward with redistricting plans as quickly as possible. To date, those assurances remain unfulfilled, and the court must take matters into its own hands to provide the voters of the City of Grenada an opportunity to cast votes for candidates of their choice. On November 18, 1997, this court conducted two telephone con-

ferences with the parties. This opinion memorializes the results of those conferences.

## I.

A short recitation of the history of this controversy follows: Shortly before the April, 1996, primary election for city officials, defendants came before this court on a motion to enjoin the election. *See City of Grenada v. Harrelson*, No. 3:96CV65–S–A (N. D.Miss.). Defendants' request was based on a finding by a state court judge that the city had failed to follow applicable state law when enacting its ward boundaries in 1991. After hearing argument from the parties, this court refused to issue the injunction, finding that defendants' complaint was merely a request for this court to "intercede in a state law question more properly addressed by the Mississippi Supreme Court." In response, defendants looked to the state supreme court for relief, which was granted in the form of an injunction halting city elections. Thereafter, plaintiffs filed the instant action seeking a determination that the order by the Mississippi Supreme Court was a change in practice, procedures, or standards with regard to voting which required preclearance under Section 5 of the Voting Rights Act and requesting this court to order special elections under the existing ward lines which had been precleared in 1992.

Within a month of the commencement of plaintiffs' suit, this court conducted a status conference in both cases to determine what steps had been taken toward resolving this matter. At that time, defendants agreed to dismiss the original action, since it had received, though not from this court, the relief it had sought. The court also learned for the first time that the Mississippi Supreme Court had lifted the injunction but that the parties had been unable to reach any resolution to plaintiffs' complaints. At the conclusion of the conference, the court scheduled a hearing on plaintiffs' motion for preliminary injunction and strongly urged the city to take the necessary steps towards implementing a new ward plan or otherwise to move this matter towards the goal of conducting city elections. The court took no action on plaintiffs' request for a three-judge panel.

In November, 1996, the court conducted a hearing on plaintiffs' motion for injunctive relief. At the outset, the parties stipulated that the April, 1996, order from the Mississippi Supreme Court was indeed a change in practice, procedures, or standards with regard to voting which required Section 5 preclearance. Plaintiffs therefore asked this court to order special elections under the existing city plan, which, as previously noted, was precleared in 1992, as a remedy for what they viewed as a continuing violation of the Voting Rights Act. In response, defendants argued that the court should take no action at that time since they had submitted to the United States Attorney General a proposed plan which included not only those citizens residing in the city under the 1991 plan but also those who became citizens of the city under an approved, but not precleared, annexation.

After hearing argument, the court concluded that plaintiffs had shown a substantial likelihood of success on the merits. Indeed, the court could reach no other conclusion in light of defendants' stipulation that Section 5 was violated when the 1996 city elections were halted without preclearance. The court found, however, that plaintiffs had not shown any of the remaining three *Canal* factors, focusing primarily on plaintiffs' failure to show irreparable injury. At that time, the court was under the impression that "defendants [were] well into the preclearance process" and presumed "that defendants [would] diligently comply with any additional instructions or requests which [might] be forthcoming from the Justice Department regarding any of the matters ... pending before it."

The court persisted in that view until August, 1997, when plaintiffs filed a second motion for a three-judge panel. In that document, the court learned for the first time that the Justice Department had requested additional information from defendants in December, 1996, regarding the cancellation of the 1996 elections, the 1996 annexation, and the 1996 redistricting plan and that defendants had not complied with the department's instructions. At no time during the next month did defendants respond to plaintiffs' motion or seek to refute plaintiffs' alle-

gations that defendants were not diligently attending to the department's concerns.

In early September, 1997, the court conducted a telephone conference with the parties and directed defendants to submit a status report to the court explaining their delay in responding to the request from the Justice Department. In the meantime, plaintiffs moved for a continuance of the October, 1997, trial setting which this court granted. Defendants subsequently complied with the court's order, stating, in pertinent part, as follows:

> On March 31, 1996, the City of Grenada submitted for preclearance the annexation. Thus far the Department of Justice has refused to preclear until it is provided with additional information on the impact of the proposed annexation on redistricting. In order to provide a part of the additional information requested by the Department of Justice in connection with the preclearance of the proposed annexation, the City of Grenada contracted with the United States Bureau of the Census for a special census of the City of Grenada following annexation. . . . Initially, the City of Grenada was advised that the special census data would be available in the spring of 1997. We are now advised that we will have full information within four to six weeks.

The city did not advise the court of the date it contracted for the special census but did state in its submission that the date of the special census itself was May 20, 1997.

## II.

The court need not linger on plaintiffs' unopposed motions to convene a three-judge court. The initial and primary issue for consideration by a three-judge court in this case would be whether the April, 1996, order from the Mississippi Supreme Court constituted a change in practice, procedures, or standards with regard to voting which required Section 5 preclearance. That issue was determined last year when the parties stipulated to that effect, and therefore, in this court's opinion, the empaneling of a three-judge court is not necessary. As plaintiffs agreed during the course of the most recent telephone confer-

ence, this court is perfectly capable of fashioning a remedy on its own. Defendants did not oppose that course, and thus, the court moves in that direction.

As outlined in Section I of this opinion, defendants have repeatedly assured the court that they were doing everything in their power to gain preclearance of a new redistricting plan so that city elections could proceed. After reviewing all of the submissions before the court and considering the facts as outlined by both parties and the steps taken by the city toward preclearance, the court has come to the conclusion that defendants have not diligently worked toward fulfilling their assurances. Defendants knew as early as May, 1996, that the Justice Department considered the postponement of the April, 1996, elections and the annexation of land surrounding the city to be changes requiring Section 5 preclearance. Defendants delayed responding to that finding until the fall of 1996 when they submitted the election postponement, a new redistricting plan, and the annexation for preclearance. In early November, 1996, prior to the last preliminary injunction hearing, the Justice Department advised defendants that it intended to consider the election matter, the redistricting, and the annexation simultaneously but could not proceed until defendants provided "basic information required under . . . Section 5 procedures to permit . . . review [of] that change," including maps of the present and proposed redistricting lines and the population statistics by race. Defendants' failure to include, at a minimum, the very maps which are crucial for the department's decision caused an unnecessary and unexcusable delay and casts doubt on the legitimacy of defendants' representations to the court that they were "well into the preclearance process."

Furthermore, as late as August, 1997, defendants had not responded to the Justice Department in December, 1996, requesting, among other things: a statement of the criteria used to develop the proposed plan, a description of the efforts made to secure input from the minority community, population data by race, returns for municipal elections involving minority candidates since

1990, and a map showing the residences of incumbent office holder and qualifying candidates. Although defendants knew in November, 1996, that the department wanted population figures by race, they focus on that request as the continued source of the delay and do not explain why these other matters were not immediately sent to the Justice Department for consideration. The figures have now been gathered, and the court assumes they have been passed along to the Attorney General. The court can only view defendants' failure to timely respond to the December, 1996, request as yet another in a series of unnecessary delays that have prevented the citizens of the City of Grenada from exercising their right to vote in municipal elections.

The court now stands ready to correct that situation by ordering city elections under the precleared 1991 plan. Although that plan was declared void under state law because of defendants' failure to allow the citizens to object to the ward lines, the plan passed preclearance by the Justice Department and was not otherwise challenged as violative of either the Voting Rights Act or the United States Constitution. The court recognizes that this plan omits from participation those citizens who were annexed into the city in 1996 but finds that it cannot further delay the other citizens of Grenada from exercising their right to cast votes for candidates of their choice when neither the annexation nor the proposed redistricting plan has been precleared and defendants have not moved quickly in fulfilling their obligations under Section 5. The particulars of this process will be set forth in the accompanying order.